

———————— Law Offices ————————

## James D. Montgomery and Associates, Ltd.

July 13, 2015

*Via email to gainerb@jbltd.com*
Mr. Brian P. Gainer
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404

*Via email to Aharrington@bestfirm.com*
Ms. Alison M. Harrington
Best, Vanderlaan & Harrington
400 E. Diehl Road, Suite 280
Naperville, Il 60563

Re: *Randolph Holmes v. Brandin Fredericksen & Village of Lynwood*, No. 14-cv-5804
Itemization of Damages and Settlement Demand
FOR SETTLMENT PURPOSES ONLY

Counsel:

This cause arises as a result of defendant Brandin Fredericksen on September 20, 2013, punching plaintiff detainee Randolph Holmes in the jaw while handcuffed behind his back, breaking Holmes' nose and giving him a concussion. Defendant Fredericksen further abused his position of authority by causing criminal proceedings (alleging Holmes spit on him) to be initiated against Holmes to conceal his battery thereby causing Holmes to spend approximately one year incarcerated at Cook County Jail.[1] Lynwood Investigating Detective Dan Kirby knew of the cover-up from the beginning and nonetheless gave testimony at a preliminary hearing against Holmes that resulted in Holmes' prosecution and punishment.

The Village of Lynwood's Chief of Police, Russell Pearson, after conducting an investigation and reviewing video footage, gave the opinion that there was no justification for Fredericksen's unlawful use of force:

> 17 A. I saw Sergeant Fredericksen strike
> 18 Randolph Holmes and knock him down.
> 19 Q. As the chief of police, did you see any
> 20 justification for the force in the garage area at
> 21 that time?

---

[1] Investigating Detective Daniel Kirby testified "I advised the state's attorney what had happened…We said that it was a use of force… which… was kind of a cover-up for a charge for …an ass whoopin." (Disc. Hearing Tr. pp.51:17-52:1). Kirby continued, "I asked ASA Garcia to please view the video so I don't have to go in front of the judge to sugarcoat what occurred." (Disc. Hearing Tr. pp.71:11-13).

> 22 A. No.
> (Pearson, Disc. Hearing Tr. 467)
>
> 22 Q. And did you form an opinion at that time
> 1 that Sergeant Fredericksen was in violation of the
> 2 general order here at the Village of Lynwood
> 3 pertaining to use of force?
> 4 A. Yes, I did.
> (Pearson, Disc. Hearing Tr. 474-5)
>
> 6 Q. And after you concluded your
> 7 investigation, did you make a determination as to
> 8 whether or not Sergeant Fredericksen's conduct in
> 9 punching a handcuffed suspect was in violation of
> 10 the general rules?
> 11 A. Yes, I did.
> 12 Q. And what was that opinion?
> 13 A. Pardon me?
> 14 Q. And what was that conclusion?
> 15 A. The conclusion was that he did violate it
> 16 because the punch was unnecessary.
> (Pearson, Disc. Hearing Tr. 477)

Chief Pearson opined that defendant Fredericksen attempted to conceal his battery of Holmes:

> 2 Q. Did you formulate an opinion after the
> 3 fact -- as part of your investigation, did you
> 4 formulate an opinion that Sergeant Fredericksen,
> 5 after the fact, tried to conceal his use of force
> 6 from his superiors?
>         *      *      *
> 11 A. Yes.
> 12 Q. And what was that opinion?
>         *      *      *
> 18 A. My opinion was that he did try to cover
> 19 his actions.
> (Pearson, Disc. Hearing Tr. 484)

Chief Pearson acknowledged that Randolph Holmes did not commit a battery against defendant Fredericksen:

> 17 Q. Is it your contention, as we sit here
> 18 today, that Randolph Holmes did not commit a
> 19 battery against Sergeant Fredericksen?
> 20 A. Yes, that's my contention.
> (Pearson, Disc. Hearing Tr. 492)

EXHIBIT 1

Nonetheless, Chief Pearson, armed with the knowledge of Holmes' innocence, allowed Holmes to continue to be criminally punished for a crime Pearson knew Holmes did not commit:

> 21 Q. When did you go to the state's attorney's
> 22 office and tell them that charges had to be dropped
> 1 because Sergeant Fredericksen was out of line for
> 2 his actions?
> 3 A. I never did that.
>     \*     \*     \*
> 6 Q. So you allowed the prosecution of a man
> 7 that was arrested in your jurisdiction that you
> 8 were the chief of, you allowed that prosecution to
> 9 continue; is that correct?
>     \*     \*     \*
> 14 A. Yes, I did.
> (Pearson, Disc. Hearing Tr. 494-5)

Despite knowledge at the highest levels of the Village of Lynwood Police department that Holmes was a crime victim, rather than perpetrator, ranking sworn officers allowed the prosecution and punishment of an innocent man. Further, despite the Cook County Public defender having issued a subpoena to the Village of Lynwood for the video footage, the footage of the punch was never produced to the defense.

Plaintiff has filed a civil rights action under Title 42 USC §1983, a *Brady* claim, a state malicious prosecution claim and a state battery claim against defendant Brandin Fredericksen. The Village of Lynwood is accountable under the doctrine of *respondeat superior* for the state law claims. Plaintiff seeks damages for his injuries, pain and suffering, lost liberty, loss of normal life, punitive damages and attorney's fees pursuant to 42 USC §1988.

Plaintiff estimates trial damages in the amount of $3,500,000.00, itemized as follows:

<u>Trial Damages Itemization:</u>

| | | |
|---|---|---|
| Lost Liberty | $ 2,000,000.00 | |
| Pain & Suffering | $ 250,000.00 | |
| Loss of Normal Life | $ 250,000.00 | |
| Punitive Damages | $ 500,000.00 | |
| Attorneys' Fees ($130,000 to date) | <u>$ 500,000.00</u> | Estimated |
| Total | $ 3,500,000.00 | |

Taking into account the risks at trial, plaintiff Randolph Holmes herewith demands the sum of $1,800,000.00 in final and full settlement of all claims.

Sincerely,

James D. Montgomery, Jr.

cc: Magistrate Judge Susan E. Cox via email to Proposed_Order_Cox@ilnd.uscourts.gov

3

EXHIBIT 1